**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARTHUR LEE GARRISON,<br><br>  Plaintiff,<br><br>v.<br><br>LT. BROWN, et al.,<br><br>  Defendants. | Case No.: 3:17-cv-00391-MMD-WGC<br><br>**Report & Recommendation of**<br>**United States Magistrate Judge**<br><br>Re: ECF No. 77 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Preliminary Injunction related to the alleged denial of treatment for his throat condition. (ECF No. 77.) The court ordered Defendants to file a response to the motion including a discussion regarding the status of Plaintiff's healthcare insofar as his throat is concerned; file under seal any relevant medical records, kites and grievances concerning his throat; ensure Plaintiff is given an adequate opportunity to review these records; file a declaration from a health care provider familiar with Plaintiff's care for his throat summarizing his diagnoses, care and future treatment plans; and, that it would set the matter for a hearing. (ECF Nos. 81, 82.)

Defendants filed their response on November 7, 2019. (ECF Nos. 88, 88-1 to 88-5, 90-1 to 90-4.) They file the declaration of Dr. K.A. Adamson on November 13, 2019. (ECF No. 95-1.)

The court originally set this for a hearing no November 13, 2019, which was subsequently moved to December 9, 2019. After reviewing the submissions of the parties, the court has

concluded a hearing is not necessary, and it has been vacated. Instead, after thoroughly reviewing the briefing, the court recommends that Plaintiff's Motion for Preliminary Injunction be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Third Am. Compl. (TAC), ECF No. 34.) The events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP) and Ely State Prison (ESP). (*Id.*) He is currently housed at Lovelock Correctional Center (LCC). Defendants are Guy Brown, Julie Matousek, and Doe prison officials (once Plaintiff identifies them). On screening, Plaintiff was allowed to proceed with a retaliation claim and an Eighth Amendment deliberate indifference to serious medical needs claim. (Screening Order, ECF No. 35.)

The retaliation claim is against Doe prison officials and is based on allegations that Plaintiff filed several grievances and complained to the Inspector General's Office about his inability to see an ear, nose and throat specialist (ENT) for his throat pain, and Doe prison officials transferred him to ESP before he could obtain his throat surgery in retaliation for filing grievances.

The Eighth Amendment claim is based on allegations that prison officials and medical staff knew Plaintiff had severe throat pain, but did nothing to treat it. After he contacted the Inspector General's Office, he alleges that prison officials sent him to an ENT, who diagnosed him as having a large cyst in his throat and recommended immediate surgery. Before he could receive the surgery, prison officials transferred him to ESP, where Matousek took away his medication for four months. When he returned to see the ENT after four months, he had a massive infection. Again, prison officials took away his medication to treat the infection. When he finally had his overdue throat

surgery, he avers that Brown took away his medication causing another severe infection in his throat.

In this motion for preliminary injunction, Plaintiff seeks an order that he be transported to Advanced ENT in Reno, Nevada for treatment of his ongoing throat issues.

## II. LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted). ). The Ninth Circuit has held that "serious questions going to

the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are met." *Alliance for the Wild Rockies v. Cottress*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III. DISCUSSION

According to the documentation submitted by Plaintiff, he had surgery on this throat on October 14, 2015. He states that he is still having issues with his throat and is in pain, and it is not being addressed. (ECF No. 77 at 3.) He submits inmate request forms (also known as "kites") asking for treatment for continuing pain in his throat in 2014 and 2015. (ECF No. 77 at 3, 5, 6, 7.)

///

///

4

Defendants have submitted Plaintiff's relevant medical records, which are summarized as follows:

Plaintiff saw an ENT on September 11, 2015, following complaints of ongoing throat pain in 2014 and 2015. At that time, he reported his throat felt worse after being given another round of antibiotics. The ENT concluded that due to significant infection of bone and symptomology, Plaintiff required endoscopic sinus surgery with a left sphenoidotomy, cultures and irrigation, to remove the lingual cyst, as well as esophagoscopy. (ECF No. 90-1 at 4-5.)

Plaintiff had surgery on October 14, 2015: a sphenoidotomy and excision of hyperplastic lymphoid tissue. Pathology revealed it to be benign, and cultures were normal. He was seen after the surgery on October 26, 2015. The ENT indicated that no further follow up was necessary. (ECF No. 90-1 at 2-3.)

Plaintiff filed a first level grievance on November 25, 2015, stating that he was sent to ESP and his appointment to see an ENT in Las Vegas was not kept, and his medication was taken. (ECF No. 88-5 at 4.) The response states that Plaintiff was seen by an outside physician on October 20, 2015, with further assessment the following day, and the physician's conclusion was that no follow up was necessary. (ECF No. 88-5 at 8.)

Plaintiff sent a kite on December 26, 2015, stating he had surgery in October 2015, but he believes they missed something. (ECF No. 88-1 at 12.) He sent another kite that day stating that the ibuprofen was hard for him to swallow due to its size. The response states: "Will try Naprosyn." (ECF No. 88-1 at 15.)

Plaintiff sent a kite on January 23, 2016, stating that he was still having a problem with pain in his throat. (ECF No. 88-1 at 11.) The response states that he was seen by a nurse on January 25. (*Id.*) He was ordered Chloraseptic on January 29, 2016. (ECF No. 90-2 at 4.)

Plaintiff sent a kite on February 22, 2016, stating he had surgery on his throat and it was worse and needed to be fixed. He was told in response that Chloraseptic spray had been issued, and he would need to be seen to determine an ongoing need of analgesic balm. (ECF No. 88-1 at 10.)

Plaintiff sent a kite on August 15, 2016, stating that his throat was in bad shape again. The response states: "Already addressed." (ECF No. 88-1 at 9.) Naprosyn was ordered on August 30, 2016. (ECF No. 90-2 at 4.)

Plaintiff sent a kite on September 1, 2016, stating that he had throat surgery for a cyst in October of 2015, and it ended up the same, if not a bit worse. He stated that it was sore and swallowing was itchy and scratchy. He was advised he was scheduled. (ECF No. 88-1 at 8.) His Naprosyn was discontinued, and an ibuprofen pain pack was ordered on September 3, 2016. (ECF No. 90-2 at 4.) There is an order on September 12, 2016, to schedule him to be seen for complaints of a throat cyst. (ECF No. 90-2 at 4.) Orders on September 19, 2016, state that Dr. Baker was to assess him for hoarseness and complaints of throat polyps. He was also prescribed Naprosyn. (ECF No. 90-2 at 4.)

There is an order on October 12, 2016, to schedule him for an ENT consult for voice hoarseness and fullness in light of history of throat polyps. His medications were adjusted. The referral was authorized on October 18, 2016. (ECF No. 90-2 at 3; ECF No. 90-3 at 4.)

There is an order on December 19, 2016, to schedule a CT of the neck, which was recommended by Dr. Schlager, who had seen him for complaints of hoarseness and fullness in his throat. This was authorized on December 27, 2016 (ECF No. 90-2 at 2; ECF No. 90-3 at 2-3), but Plaintiff did not undergo the CT scan until August 2017, the results of which were negative. (ECF No. 90-4 at 2.)

Plaintiff sent a kite on May 23, 2017, stating that Chloraseptic spray was not working for his throat, and that it was a "rollercoaster" of scratchy, swelling, hoarse, and painful, and asked for something to be prescribed. (ECF No. 88-1 at 6.)

Plaintiff sent a kite on June 14, 2017, stating that he had asked the ENT at NNCC to give him something to ease his throat pain because it was rough and swollen. (ECF No. 88-1 at 5.)

Plaintiff sent a kite on August 1, 2017, asking for a refill of his pain medication related to his throat. (ECF No. 88-1 at 4.)

Plaintiff sent a kite on December 25, 2017, stating that his throat was bleeding from coughing and was sore. He asked when his ENT visit was scheduled. (ECF No. 88-1 at 3.)

On January 17, 2018, Plaintiff sent a kite stating he needed to see the ENT for his throat. He asserts that he coughed so hard it tore the scar tissue from the surgery causing his throat to bleed. (ECF No. 88-1 at 2.)

The next medical record is from an evaluation on August 31, 2018. It was noted that Plaintiff had a raspy voice, and mild diffuse thyroid enlargement with no nodule. It appears to state that the CT scan in August 2017 revealed no mass in the neck. (ECF No. 90-4 at 2.)

Defendants have submitted the declaration of K.A. Adamson, M.D., who indicates he is familiar with Plaintiff, his medical care and medical complaints, including those associated with his throat. Dr. Adamson states that Plaintiff's throat, neck, larynx, and paralaryngeal structures were all found to be normal, and that there is no future treatment planned at this time. He opines that Plaintiff has received, and continues to receive, appropriate medications for his diagnosis. (Adamson Decl., ECF No. 95-1.)

Plaintiff has neither addressed whether he is likely to succeed on the merits of his Eighth Amendment claim related to treatment of his throat condition, nor that he is likely to suffer

irreparable injury in the absence of injunctive relief. The record before the court at this time does not demonstrate either of those factors weigh in favor of granting injunctive relief. The kites Plaintiff submits in support of his motion are from 2014 and 2015, which do not reveal deliberate indifference to his throat condition following his October 2015 surgery. Defendants submission reflects that the last kite he sent concerning his throat pain was in January of 2017. Moreover, Dr. Adamson's declaration, while sparse, indicates that Plaintiff's throat is normal and he is receiving appropriate treatment. Under these circumstances, the court cannot conclude there is evidence Plaintiff is likely to succeed on a deliberate indifference claim. Nor does this record support a finding that Plaintiff would suffer irreparable harm in the absence of injunctive relief, particularly where Plaintiff's last documented kite about his throat pain was in January of 2018, and his last medical record concerning his throat was in August of 2018. In light of these findings, it cannot be said that injunctive relief would be in the public interest or that the balance of hardships weighs in Plaintiff's favor. Therefore, Plaintiff's motion requesting an order that he be transported to see an ENT in Reno should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's Motion for Preliminary Injunction (ECF No. 77).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: November 19, 2019.

*William G. Cobb*
William G. Cobb
United States Magistrate Judge